RED RIVER LUMBER CO., Inc., v. COMEGYS.

No. 4440.

Court of Appeal of Louisiana. Second Circuit.

March 6, 1933.

Thomas M. Comegys, Jr., of Shreveport, for appellant.

Cook & Cook and C. D. Egan, all of Shreveport, for appellee.

DREW, Judge.

Plaintiff sued for the purchase price of certain building material, including twenty-six squares of shingles, and asks that his lien as a materialman be recognized on the lot and house for which the material was furnished. The entire account is admitted by defendant, with the exception of eighteen squares of shingles which were stolen. All the remainder of the account has been paid. Therefore the only thing left in the suit is the purchase price of eighteen squares of shingles, amounting to $121.51.

It is admitted that the price is correct, and that the shingles were purchased by defendant from plaintiff. Defendant contends that the shingles when stolen had not been delivered into his possession, and therefore they were at the seller's risk.

Plaintiff did not handle the kind of shingles desired by defendant, and, when defendant ordered the shingles, he was informed by plaintiff that they would have to be ordered. Plaintiff ordered through another concern the shingles desired by defendant, which were shipped to Shreveport by rail. When they arrived, plaintiff sent its drayman to get the shingles and to deliver them to defendant. The drayman secured the shingles from the car and took them to the location where defendant was constructing a residence in the Broadmoor section of Shreveport. This was on Friday afternoon about 3 o'clock. Due to the fact that it rained a part of that day, there was no work going on on the building, and there was no one present to receive the shingles. The drayman unloaded the shingles, as he says, on the lot near the structure. But the evidence discloses that he was mistaken as to the line, and that he stacked the shingles on a vacant lot adjoining the defendant's lot and some four to eight feet from defendant's line. This mistake could easily have been made, however, for the reason that defendant was using the adjoining lot for a driveway to get material on to his lot. After stacking the shingles, he took some shiplap and covered them to protect them from the weather.

There was no work on the building the next day, but defendant met his workmen there to pay them for the week's work. Defendant saw the shingles and made an inspection of them, counting the bundles to see if there were twenty-six squares, and, as he said, assumed they were the shingles he had ordered. Each of the workmen saw the shingles, and there can be no doubt that defendant knew they were the shingles he had ordered and that plaintiff had delivered them for him.

Again on Sunday afternoon defendant passed this location and saw the shingles there. On Monday morning, when work began on the house again, it was discovered that eighteen squares of the shingles had been stolen. The remaining eight squares were then placed in the toolhouse by defendant and later used on the building.

One of the contentions of defendant is that the shingles were not delivered to his premises. However, the evidence shows that this contention of defendant was never made known to plaintiff until answer was filed in this suit on May 4, 1932, and the shingles were delivered January 15, 1932.

A different situation would confront the court if the shingles had been stolen on Friday night before defendant knew they were there. But, when defendant saw the shingles on Saturday morning, inspected them to see if the quantity ordered was there, and knew they were the shingles ordered by him from plaintiff, it amounted to his taking possession of the shingles, and they were his shingles then just as much as the remaining eight squares were his on Monday morning when he removed them to his toolhouse. The only difference is that he took precaution on Monday to protect the remaining eight squares of shingles, when it was incumbent upon him to have taken precaution on Saturday when he found the shingles to have protected all of them.

On Saturday morning, when defendant knew the shingles had been delivered by plaintiff to him, if they were not where he wanted them to be, he should have notified the plaintiff and made his demand. He did nothing until Monday morning, when he found part of them had been stolen. There can be no doubt that, if all of the shingles had been there on Monday morning, plaintiff would have used them and not felt the necessity of taking the matter up any further with the defendant, just as he did with the eight squares that were not stolen.

Plaintiff contends that, when the order was given for the shingles, defendant instructed it to deliver them to the job as soon as they arrived. Defendant says he requested plaintiff to notify him as soon as the shingles arrived. In either case it is clear that defendant was in a hurry for the shingles, and that plaintiff acted in accordance with the desires of defendant when he sent the shingles to the job as soon as they arrived. The fact that the shingles were stacked a few feet from defendant's property line is of little moment. They were delivered to the job for all practical purposes. Defendant found them and inspected them to see that the number ordered was there, made no protest as

to delivery, used that part which was not stolen, and cannot now successfully contend there was no delivery of the shingles.

Defendant's position now is that he knew they were the shingles he had ordered, and that plaintiff had delivered them there for him; that he could use them when he wanted to, but, since they lacked a ,few feet of being on his property, it was not a legal delivery, and therefore, until he actually made use of them, they were the property of the seller; it was not necessary that he inform the seller that the delivery was not complete, but of that he would remain quiet; if no one stole the shingles before he got ready to put them on his house, he would use them. If they were stolen, he would refuse to pay for them. We think this position untenable, and that there was a delivery in accordance with the contract, and that defendant is liable for the purchase price of the shingles.

Plaintiff in this court abandoned its claim for the recognition of a lien and privilege as furnisher of materials. Defendant prays that his right to sue for the illegal filing of a lien against his property be reserved to him. If he has any rights, no harm can come .in reserving it to him.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court granting judgment to plaintiff in the sum of $121.51 with 5 per cent. per annum interest from April 6, 1932, until paid, and all costs, be affirmed; and it is further ordered, adjudged, and decreed that any right defendant might have by virtue of the illegal recordation of a lien against his property by plaintiff be reserved to him.